Mr. Zirkin, we'd be happy to hear from you whenever you're ready. Thank you, Your Honor. May it please the Court, Gerald Zirkin representing appellant Teresa Barringer. Your Honor, it's not every statement to a DOJ agent, be it an assistant U.S. attorney or an FBI agent, violates Section 1001. The statement must be material to a specific matter within the jurisdiction of the agency, when the agency has power to exercise authority in the particular situation. We know that from Rogers, from the Supreme Court. Not just the broad subject matter, and likewise decisions of Blikenship in the 11th Circuit and Lutz in the 6th. Arch Trading Company, from this Court, the 1001 jurisdiction turned on whether the license at issue was required for release of the bank deposit. Not whether the agency had authority over violations of sanctions generally. So the Court must look at the specific transaction at issue to determine whether or not the agency has authority over that. And it is not that agents were investigating, quote, whether Barringer had committed any crimes at work, as the government has posited in their brief. Phishing expeditions do not satisfy the jurisdiction requirement. Ms. Barringer's withdrawals from her 401k... Well, how is this a phishing expedition? Because the FBI was investigating not only failure to pay withholding taxes to the IRS, but also I thought there were financial misdeeds at JNR that were the subject of the investigation as well. Yes, Your Honor, I'm not saying that this was a phishing expedition. What I was trying to say was that the government, that the standard that the government seems to put forward in its brief, that it's sufficient that they were trying to find out what crimes of unknown description Barringer had committed at work. That is not the standard. The standard is much more specific than that. So we have to look at what the transactions were. And the transactions at issue, of course, the tax counts, clearly. But the other part of it is the wire fraud. I thought jurisdiction in this matter was determined by the question of whether the investigative authority had the power to act. And if that's the standard, whether the investigator had the power to act. The FBI is a part of the Department of Justice. And the investigation would likely play a critical role in whether a prosecution was ultimately brought. And so a lot of times, you know, the federal authority is divided between the investigative authority and between the investigative function and the prosecutorial function. I mean, every U.S. attorney's office is relying on an investigative function of sorts. Certainly the DOJ does. So why isn't the standard one of the jurisdictional standard one of the power to act? And why did the FBI as an agency of the Department of Justice lack the power to act in this situation? Because there could be no crime here. That's why they couldn't. Their authority is to act in relation to possible federal crimes. And it is clear, given the nature of 401K, so what we know is that there was no – that the trustee did not have a property interest in the – he was a trustee. Trustees don't have a property interest in the corpus of the trust, which was the 401K plan. Let me ask you what you just said. Isn't there a – isn't it criminal to take money that should be paid or the money should be paid and withheld from the employee's paycheck? And in turn, the money was taken from the 401K. And so what I'm thinking is, isn't the government's interest here not just in getting the money but in how it gets the money? And how it gets the money is through the widely used and indispensable tax collection mechanism, which is withholding from an employee's paychecks. You know, they're known as withholding taxes. And if everybody's free to just freelance and pay the IRS from whatever pool of money they think it's desirable, wouldn't that be a significant impediment to the tax collection system? It may be, Your Honor, but that is not the issue for determining jurisdiction in terms of DOJ. DOJ is investigating crimes. And the crime here that's being investigated that these statements related to, the crimes are wire fraud. And there was no possibility of wire fraud here because the trustee, AXA, could not be deprived of something of value. And that is the sine qua non of the wire fraud statute. This court said that in Adler. You got those counts dismissed. Well, we did, Your Honor. That is correct. They did. That was not trial counsel. Isn't this a spillover argument? It is a spillover argument. So the argument is that if these had been dismissed as they should have been pre-trial, then we would not have had a situation in which the evidence on the fraud, which was incredibly prejudicial. Wasn't the indictment sufficient? The indictment, the form of the indictment used the statutory language, as many indictments do. As a matter of fact, most of the ones I've seen do. And on its face, it could hardly be dismissed.  The first one is that where an element of the offense is not within the statutory language, which is the case here. Because that is what if you look at Adler and what is the sine qua non of this crime, the deprivation of something from another is not the language that's in the statute. That is an essential element. So first of all, it does not have all the elements in it if you just quote the statutory language. But the indictment went beyond that. And the indictment identified what the act was that constituted the wire fraud. And that was not causing AXA to lose something of value, be deprived of something of value. But rather what the indictment said was they caused them to make disbursements. That's not a crime. Excuse me, Mr. Zirkin. Yes, sir. One of the things you said here is that the wire fraud counts were incredibly prejudicial. But didn't the district court, I mean, I think it's a Supreme Court case in the United States v. Powell, which says that we shouldn't try to mix and match and sort of look at one claim, a jury's verdict with respect to one count and see if it lines up consistently with another count. And didn't the district judge here give very careful instructions that each count was to be considered by the jury on its own and as a separate matter? And isn't that something that would have gone, that instruction have gone, worked, operated considerably to mitigate any prejudice? With respect to the wire fraud count. I think absolutely not, Your Honor. And there are a couple of parts to that. The first one is this trial had the most minimalist jury instructions that I've ever seen. But beyond that, the fact is that evidence was put on over and over and over again about the fact that she had seen these warnings, she read the fraud warnings, she did it anyhow, she lied, she lied, she lied. They said it over and over again. They got testimony. They didn't just put on the forms that she signed. They put on the blank forms. Then they did it again with the forms every time having the witness read the fraud warnings. But worse than that, we then get to the fact that they put on testimony, whether true or not. And we, of course, claim it's false testimony. But they put on testimony that she undermined, by her withdrawals, she jeopardized the entire 401K plan. They didn't give any explanation for that. And quite frankly, there is none. But they gave, she gave a, they put on evidence that she had undermined everybody's 401K plan and all their retirements. Now, that is unbelievably prejudicial evidence. And there's no jury in the world that's going to separate that out. And what we then have is a jury that goes out and from the time they leave the courtroom until they come back is an hour to deal with each count and to deal with all the evidence and to deal with all the exhibits, a ton of exhibits. Yes, Your Honor. Let me ask you a question about that. I know you moved to dismiss parts of the indictment, particularly dealing with the wire fraud charges. And the district court denied that. Is that correct? That's correct, sir. All right. So, was there, were there separate objections made during the comments by the prosecutor for the effort to put on evidence through the plan trustee or others that go to the point that you're making here? Those are... This is a spillover evidence. Yes, sir. Correct? Right. So, there were some objections, you know, small ones to things, not a wholesale objection. There was no objection, of course, to the worst evidence, which was the testimony I've just talked about in terms of her ruining everybody's retirements in 401Ks. They had no warning that that evidence was coming. He was not designated as an expert. So, they did not know this testimony was going to be there. And, yes, they did not object to it. And that's why we have raised it as a plain error argument. And we think the error, in fact, is clear error. It is false. The government has not even attempted to justify it. They have not come before you and said this is, here's the explanation. Because the fact is, if you take out evidence from a 401K that is your money, if you take out money that is yours, that can't... It doesn't matter what your reason is. A bad reason doesn't undermine the plan. It is the same money that's being withdrawn, and it is yours. And that can't undermine it. Is there any theory that taking money out of a 401K pursuant to a false statement, in other words, a statement which qualifies you to take it out even though you couldn't take it out, is there any notion that that offends the IRS and the lack of and the deprivation of taxes? Quite the opposite, Your Honor. And I put a citation to the link in my brief to the policies. The policy is to save plans, not to destroy them. We shouldn't be surprised by that. So the policy... I know, but there's a quid pro quo in establishing plans. And so in order so they don't get abusive, there are all kinds of rules attached. We can't go into our 401Ks before a certain age. And, of course, that doesn't help the plan. In other words, you would still save taxes. It prevents abuse. And the question is when they put those rules in to prevent the abuse and you circumvent the rule by a lie, is that... doesn't that deprive the government of taxes that it otherwise would get? If I took it out, I would get a penalty. I'd be taxed and I'd get a penalty, right? Right. But if I lie and get into one of the exceptions, I wouldn't. Conceivably. And my question is, is there a theory, a viable theory? I don't know. I'm asking this as a matter of curiosity. Is there a viable theory that the government is deprived of money on the basis of that lie? That would not... Conceivably, I don't know. Nobody has advanced that. The reason I'm asking all this is there is a sequential aspect about this case. It started out with a clear abuse of trust. We had employee money that was withheld and not paid to the government. Yes, sir. And we had a woman who was personally liable for that. Personally liable. Yes. So she lies to her IRA custodian to get the money out to cover herself. Yes. In doing that, she provides the government out of penalty and taxes. If she went in a straightforward, just withdrew the money, she would have to pay a penalty and taxes, right? Well, but I don't know that she didn't have to pay it here anyhow. Well, under an exception, she may not. I don't know what the tax was. Yeah, I don't... If there was an emergency, they wouldn't pay the penalty at least, for sure. I don't know it well enough. My point is, just to get to my whole point, is the FBI questioned her about those lies and those statements. And it turns out the jury found that they were lies and that was material to the whole scheme. She has three counts charged against her for that. They also thought that it was wire fraud. That turns out to not have been the case based on the evidence, not necessarily on the indictment, I think. And the third, of course, are the IRS violations, which are really not challenging in that regard. So your arguments really go to, number one, was there jurisdiction for the FBI? And it seems to me that was in the heartland of what they were investigating, real crimes. And then when it came to dismiss the wire fraud counts, on their face, the judge said, basically, let's wait and see what the evidence is. The count stands. It contained the elements of statutory elements that Congress set out. And so at the end, when the evidence didn't pan out, it threw those out. Now, your argument is that it should have dismissed it to avoid the spillover. But, of course, you don't know the spillover at the time of dismissal. My argument is not it should have dismissed it to avoid the spillover. My argument is it should have been dismissed because on the face of it, it could not be a violation of the wire fraud statute. Because no one was deprived of anything of value. So we're coming down to the argument as whether, so to speak, the indictment states a claim or failed to state a claim. We believe that it's failed to state a claim. That is correct. And, right, therefore, it should have been dismissed. That is correct. My time is up. Thank you. Thank you, Mr. Zirkin. You have some rebuttal time as well. Yes, sir. Ms. Brockhorst. May it please the Court. Your Honors, I believe Judge Niemeyer has pretty well laid out the government's arguments in this case. Well, I didn't intend to lay out. I was trying to find out where your colleagues' arguments were. But please address them as these were inquiries. I do believe you've hit on most of the points that I wanted to make today, which is primarily that almost every issue in this brief comes down to the question of whether the wire fraud charges were properly before the court in the first instance. And as defense counsel has pointed out, in his view, comes down to whether or not it is possible under any theory or any amount of evidence for there to be a property interest of another in the 401k plan. And in preparing for this argument, I felt like perhaps we were talking in a kind of childish is-to-is-not argument in the brief. And so I looked more into exactly the nature of a trust. And I went to Black's Law Dictionary, being not an ERISA attorney, and felt like that might be a good place to start. I'll point out that the second part of the first definition of the word trust, which a 401k plan is a trust, in Black's Law Dictionary is a property interest held by one person, the trustee, at the request of another, the settler, for the benefit of a third party, the beneficiary. So when the government is preparing its indictment and determining if a crime has occurred, it certainly is a good basis for believing the trustee. I think the argument is, though, the trustee has no, the trustee has a duty and is holding the property for somebody else. But the trustee has no skin in the game. In other words, there's no property or financial interest that he gains or loses by reason of the transaction. And I guess the district court, on that basis, threw out those counts. My question is to the government, I mean, to the defendant, was, does the government have an interest that is recognizable under the wire fraud statute? I don't know the answer to that. And I'd be interested in your comment on that. I think so. I'm a little hampered by the fact that those, that question was not more fully explored in the evidence. But if I could pause for a second and point out that it was, the court did not dismiss the wire fraud on the grounds that it's not possible for the trustee to have a property interest. It dismissed it because there was no evidence of the property interest of the trustee. Well, I understand that. But I think the defendant's argument goes further and says that there could not have been an interest in the context of this case. That is an IRA in the hands of a held by a bank. And so my question is, what is the possibility of lying to an IRA trustee? So certainly, I think, if I understand correctly, the government is deprived of the penalty. There's potentially tax consequences long term by resulting from an early withdrawal. On the assumption, I think, the assumption that underlines the whole system of creating 401ks is that they will continue to grow over time. But counsel, those penalties would apply to the individual doing the withdrawal. Yes, sir. But they would be paid to the IRS, however. They'd be paid to the IRS. But the question here goes, well, what's the, because I think this is a 401k that's a corporate sponsored, it's not an IRA. So you do have a trustee who held some form of legal title as opposed to any equitable title to the underlying assets. But the question dealt with in the wire fraud, and I think to a certain extent in the false statement charges, was the interest of the plan, the interest of the trustee. And here, as I understand it, the district court dismissed the wire fraud charges because there was a failure of proof. Yes, sir. Yes, the only evidence. I'm sorry. That ties into the spillover evidence argument to me to a certain extent. Because I'm just not familiar with cases where, and there may be some out there, and maybe you can point them out to us, where you have an individual who, in effect, commits a fraudulent act in the common parlance by falsifying their withdrawal documents from a plan. But I'm not familiar with any ERISA case in a circumstance like this that has resulted in the disqualification of the plan. And ERISA's been around for about 50 years. Do you have a case? I do not, Your Honor. I do not. But the fact that we do not. How do you justify some of the government's arguments in this case about it jeopardized the financial security of all the participants in the plan and whatnot? It certainly would put in jeopardy the defendant on an individual basis. But it seems like to me the government did go beyond the pale, maybe not prejudicial, but to make the comments it made about the disqualification of all the plan participants. And I can see Mr. Zirkin's point about how that could influence the jury in the consideration of the other crimes that were charged. Well, I think our understanding of the 401k is, as a trust, the trustee has a coextensive, simultaneous property interest in the trust, along with the beneficiaries whose money it is. And if an individual can withdraw... They don't have an equitable right to any of the property in the trust. That's correct, but they do have an interest in maintaining the property in the manner designated by the trust. And if an individual can just make up any reason that they want, falsify their forms, withdraw their money when they want, they've reduced what is supposed to be a trust to nothing but a bank account, which is certainly how Ms. Berenger was treating it. Can you just explain to me in simple terms who has been harmed? Normally, because when you look at the criminal law, this is a very clear indication of who has been harmed. Simple example, you know, that a victim has been harmed in an armed robbery or what have you. I'm kind of wondering who's been harmed here. If the government got the money to which the amount to which it was entitled, is it in some way harmed by the fact that the funds were withdrawn from the 401k as opposed to the employees' paychecks? I want to know, you know, where, because in the criminal law, you have to find some harm. Who has been harmed and how? Just answer that clearly for me. Well, I think that the theory that the government proceeded on was that the integrity of the trust is placed at risk when people violate its rules. And it could lead to consequences, perhaps the decertification of the trust, additional costs, if the trustee may no longer be maintained or the administrator costs arising from having to change the administrator. I ask you for the case that would do that. And I don't have that, but I want to make sure that we're focused on the fact that we're not here defending a conviction on wire fraud. The question is just whether it's possible that the evidence existed and such that it was proper to allow them to go to the jury. And given the fact. Who has been harmed by the activity here? Is it the government, which received every penny that the government was entitled to? They just didn't get it through the right channels. Is it Miss Berenger? It's an odd kind of thing in a way to have the person who is harmed by the criminal law be the person who committed the crime. And that's, you know, that's that's just usually it usually A harms B. And now is the theory that that the criminal law applies to B harms B? Or what? The way I thought you might go at it here. Is that. The government has an interest. Not simply in. Receiving a certain amount of money, but that the overall system of taxation. Depends upon regularity of channels. And that is that. Taxes of this nature. Are commonly denominated withholding taxes. And they are commonly. Taken. From the employees paychecks. In a timely manner. Which is at the end of every pay period. And so. If we are in the situation. Where someone can devise an alternative method of paying withholding taxes. According to their own preferences. Are we countenancing a situation where people can just. Pay withholding. Taxes by whatever vehicle they themselves. Choose. The withholding tax withholding. Is at the very heart. Very hard of our overall system of revenue collection. And. If it unwinds to the extent where you don't have to exactly do it. This way, you can do it in that way. And the rest. We could be in a fix. So I thought the question. Answer to my basic question of who is. Is that the government was harmed here. By a system of taxation. That is supposed to move forward under a regular mechanism. Sort of becoming willy-nilly. And that. That I thought was the harm. Check me if I'm wrong. No, your honor. I think what I think you're correct. And I think what you're getting at is. Kind of the second layer of argument that we. That supports the convictions on all of the counts. That remain in this case. Which is that. Even without the wire fraud charges. The evidence still comes in. And with relation to the other crimes that were charged. Well, what is it? What is the crime of the tax crime? We have our first four counts of tax. They were to pay. Yes, she did pay, right? Well, she did not timely pay the. Is it a timely issue? That's it. It was ultimately paid. I think. Perhaps even after the case was brought. I may be wrong about that. But. Well, with regards to the 2014. Withdrawal from the 401k. She takes out that money and uses it to pay. Previous. I'm trying to understand the theory, even of the. I'm actually following up a little bit on judge Wilkinson's question, but. What is the violation? The statute says failure to pay. But all of them were paid, weren't they? Ultimately, they were all paid. So, why is there a crime? Because they were not paid in when they were supposed to be paid. Does the statute say they have to be paid within a certain time? The statute itself does not say that they were paid. There's a regulation? That's my understanding. I don't have a citation for your honor. Well, there's statutes and regulations that lay out the withholding tax mechanism. There are. Yes, sir. And they were not complied with this in this case. And part of the defense was not that she properly ever paid the withholding taxes. I mean, there was almost no issue presented at trial. The evidence is. So, on the four counts. The only evidence that was necessary was that she did not pay that money. Say it has to be in the quarter of following or something. She did not pay that money as required by the tax laws. Yes. The last three counts are during the interview she lied to the FBI. Yes, sir. Why are we having all this discussion about wire fraud, misstatements, trust, and all that? In other words, I can't figure out why the jury would be more likely to convict than not. Even if she committed a wire fraud or didn't commit a wire fraud or falsely charged a wire fraud. The evidence is black and white that she didn't pay the taxes, right? Yes. So, those convictions are unassailable. They're not raising challenging those. That is correct. And the only thing left are the three misstatements done during the meeting. Yes, sir. And they were all done in anticipation of an investigation within the jurisdiction. In other words, I'm just wondering why. I guess I should be posing this to Mr. Zirkin, but even spillover, I can't understand why there's any spillover because the false statements came before everything. Yes, sir. They came in that meeting where the FBI was asking questions. She lied. And that's what the jury found. She lied. Yes, sir. And the argument defense counsel puts forward for why the 1001 charges were not proper and that the lies are not material or within the jurisdiction of the government, takes an extremely narrow view that is not supported by the case law as to both jurisdiction and materiality. The fact is, as the Bergen, as the Supreme Court- We can address that. But I think- In other words, with all this discussion about whether there's a spillover effect, I don't understand even the possibility of a spillover effect because the events giving rise to the last three counts preceded all the withdraw- charges. Basically, it was an investigation. And we can argue about whether the investigation related to the natural crimes. But it certainly related to the background of the tax, and it shows the intent to avoid taxes, the inability to pay the taxes. And I'm posing it to the wrong person. That is exactly the point that we tried to make in the brief, that the wire fraud question is, frankly, just a huge distraction because all of the evidence that came in was proper as to the 1001 charges and her knowledge and intent as to the tax charges. She obviously knows she's done something wrong with the taxes because she's lying on a form to get money out of her 401k that she's not permitted to take to repay the taxes in 2014. And then she lies again in 2016 to take more money out of her 401k, knowing she hasn't paid the employment taxes, but then even knowing that she has an obligation to pay those, still does not pay the taxes. She uses it to pay other vendors and creates a- I understood Mr. Zirkin to say, and he can correct this if I've misunderstood him, that on the spillover evidence claim that the standard of review was plain error. Is that your understanding? Yes, sir. Okay. As to the abuse of trust enhancement, normally we find abuse of trust when the trust is placed with someone who has discretion and they abuse their discretionary authority. In this case, she was not supposed to have any discretion. She was supposed to pay the taxes by withdrawing the proper amount from the employee's paychecks. And the law did not leave her with discretion on that point. And so that doesn't speak to criminality on a great many of these points. It speaks only to the sentencing point of the abuse of trust enhancement. But I'm wondering, the law applies to taxpayers and accountants and the like, and we either obey the law or we disobey the law, but every time an accountant has a duty to file an honest tax return or every time a taxpayer has a duty to file an honest tax return and they don't, that's a violation of law and leads to either a civil or criminal penalty. But that's not an abuse of trust enhancement, is it? Because the federal government is not entrusting us to pay such and such an amount. The law is demanding that we pay such and such an amount. And I'm just a little bit confused, I guess, as to why an abuse of trust enhancement could apply when there is a legal command to follow the law, but when no discretionary authority is reposed in the individual on whom the trust is conferred. And normally, I mean, there's a lot of circuit law out there that says to apply the abuse of trust enhancement, there should be some abuse of discretionary authority. And I don't think, I think she was under legal obligation to do certain things, but I don't understand that trust was necessary, reposed in her as to which she could exercise discretion. What's your response to that? And, Your Honor, I see my time is up, but I presume I may go forward. People always say my time is up when they want to dodge a question. No, I'm happy to answer the question. And I think the answer is, as this court previously found in an unpublished decision in Smith, is that that takes an overly narrow view of what the scope of the discretion is. She has clear legal dictates she is bound to follow in collecting and paying over those taxes, just like a medical professional who must comply with Medicaid rules has a clear mandate to comply with those rules. But she's not supervised by the IRS. The IRS has instilled in her this obligation, but it doesn't manage her work. It doesn't watch how she does it. It just trusts her. Do you agree that a breach of trust has to be discretionary? I thought that if you put money in the hands of a trustee for the benefit of beneficiaries and you tell the trustee he must do this, he must pay taxes quarterly, he must pay out the tuition, and he fails to do it, that's an abuse of trust, isn't it? Yes, I would agree with that. And I think the Abdul Shafi factors don't necessarily take that into account. I mean, there may be a trustee's sole power or duties may be mandatory. But the trust aspect is that the trustee is holding the assets as opposed to somebody else. And here the government takes the position that the employer has withheld employee money, and now the company is in trust to the government because it's now employee money that needs to be paid over to the IRS. In no way does it belong to the employer. And in that sense, it's a trustee, and the failure to pay it is a breach of that trust, isn't it? Yes, it is, Your Honor. And the employer has a fiduciary responsibility to both the IRS and the employees. At that moment, it has collected everything. Is there a case that categorizes that relationship as a trust relationship? I think United States v. Smith. Smith does it. That's our opinion. Does that rely on some other cases? No, Your Honor, I believe it just relied on the court's analysis of the relationship between the IRS. What is the limiting principle to your view? Well, I think that it would be appropriate to say that any time there is a fiduciary obligation and it is violated, that that is almost always per se a violation, an abuse of trust under the guidelines. Well, if I can ask one last question, not to belabor this, but that brings up the point of where would be the case where you're found to be a responsible person under the withholding statute where you would not automatically be guilty of an abuse of trust enhancement? I don't think that there would be. And when you look at the totality of the guidelines, I think that's appropriate because 2T1.6, which applies to 7202 violations, the only guidelines are determined by the tax loss, which would be an identical guideline to if I just did not pay my own taxes in that amount. And certainly the person who is entrusted with the employee's money should be penalized more harshly than me just as a private citizen evading my taxes. And that's exactly what the abuse of position of trust is about, that you've been given a special duty and you are more culpable than the average person, in this case, a tax evader. So certainly the employer who withholds their employee's money and doesn't give it over to the IRS. But you've already been found guilty of the crime, an element of which is the same that would constitute the enhancement. Well, I don't know. It's the evidence that element supports the enhancement. I don't know that it constitutes it. And it's important to remember that double counting is not per se permissible under the guidelines. That's in Comment Note 4 of 1B1.1 that they are intended to stack. So I think if 2T1.6 already included an enhancement for over the tax table for the fact that there was a fiduciary obligation that was breached, then the abuse of position of trust would not apply. But because it doesn't have such an enhancement and it puts the guideline level... I can see that there might be an abuse of an employer's trust on the part of an employee in this position. It's a little bit more difficult for me to see that this is a violation of a legal duty as an abuse of the government's trust. The government has no idea who this person is. I can understand how the employer can find an embezzler to have abused the trust. But it's more difficult for me to see how everybody who has some legal duty imposed by virtue of our system of taxation. You can say, well, no, this is a fiduciary duty. But I don't know how to come down on this, but it's just not self-evident to me. There's an abuse of trust where nobody in the party conferring the trust has no idea of her identity or who she is. And it is a troubling aspect to it. And that is that you commit the crime. If so, in fact, you abuse the trust. I can see your side of it. I can see the fact that this is a fiduciary duty with respect to either the employee's funds or their money wasn't taken. But it can be the fiduciary duty can be vis-a-vis the 401k. It's just I just have to mull it. Anyway, we thank you. Thank you. Thank you very much. And let's hear further from Mr. Zirkin. Thank you, Judge Wilkinson. Let me start responding to Judge Agee. Your Honor, I did not intend to say that plain error applied to the spillover. I was talking about the plain error as applying to the false statement claim. The spillover is simply the effect of the failure to dismiss the counts pre-trial. Tell me, play that out a little bit. Yes, sir. It seems to me that with respect to counts one through four, these comments really have nothing, especially when the court explained in its instructions that you have to take each count. The failure to pay those taxes, there may be some intent aspect, but the failure to pay those taxes was pretty black and white. So the only three counts that you would have to argue on would be the false statement claims. And the evidence would come in on those anyway. The evidence about what was said, how it was repeated. In other words, I would think the government could rely on the false statements made to the trustee in order to back up and explain the false statements made in the meeting. In other words, I don't understand the spillover effect, and maybe you can explain that. Yes, Your Honor. I'm not sure I see that that would come in, and the burden is certainly on the government to prove. It would come in that she violated the 401K rules by lying. And in order to cover up that lie and show that it was not a mistake at the meeting with the FBI, they put that in. In other words, she could come back and say the meeting with the FBI, well, I misunderstood or overstated. This evidence would be part of the same play. The reason she's saying it to the FBI as she's lying to the FBI is to cover what she did to the 401K trustee. And I would think that would come into evidence pretty well. I don't think that, first of all, I don't think that that's necessarily entirely the case. But in addition, remember that the statements are not recorded, number one. So there was question as to what the statements actually were. Number two, there's a question of whether or not. There's no reason to allow the evidence of her statements to the trustee in order to explain or to flesh out what she had stated and what the people at the meeting said she said. What did she say there? So she said so she's charged with misstating her last day of work, how long she worked and when she was paid. I don't see how all of this stuff about the fraud statements and you were warned and all. I don't see how all of that comes in. I don't see how this testimony comes in about the fact that you've ruined the retirements of all of your coworkers. She said one of the basic statements was foreclosure. And she said to that, she said to the trustee, I'm doing this to avoid foreclosure. And she said the same thing to the FBI. And the foreclosure, of course, she provided an explanation for. I understand. But I'm saying whether it would have come into evidence. In other words, you're arguing the spillover effect unduly prejudiced her or for the jury. Well, I don't think that they could have gone through the litany of when you read the way they did it, a litany of showing all the forms and showing the fraud warnings and going through all of that twice for every one of these things. I don't think that the court, the court. Maybe that's repetitive and overplay. You have to object to that. But the district court could have exercised different discretion if this had not been on the table. The court then is making a different balancing when it's judging whether or not it is more prejudicial than probative. So we don't know what the end of that is. Your Honor, if I might just, I know that my time is up, but just address one more thing that was said, which is this case is you can't analyze this case based on whether the government was harmed. That's not what she was indicted for. What she was indicted for was that she caused Company A, she lied to them to obtain monetary disbursements. It's not about whether the government's harmed. It's about whether or not she caused the trustee to make monetary disbursement. So that's the sole question and whether or not that is a crime under wire fraud. Thank you. We thank you, Mr. Zirkin. We thank you. We thank you both. And as I said to the previous counsel, we can't come down and shake your hands and everything, but we are nonetheless so appreciative of your coming here and giving us your time.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, G. Steven Agee